**In re Edward J. RYKER, Debtors.**

**Edward J. Ryker, Plaintiff,**

**v.**

**David and Denise Current, Defendants.**

**Bankruptcy No. 99–41976 (NLW).
Adversary No. 00–3307.**

United States Bankruptcy Court,
D. New Jersey.

Oct. 8, 2004.

Dean G. Sutton, Sparta, NJ, for Debtor/Plaintiff.

Melinda D. Middlebrooks, Paul S. Pflumm, Middlebrooks & Shapiro, Roseland, NJ, for Defendants.

## *OPINION*

NOVALYN L. WINFIELD,
Bankruptcy Judge.

This matter is before the Court pursuant to a remand from the Hon. John C. Lifland of the United States District Court for the District of New Jersey, with the direction that the Court address whether a Chapter 13 debtor has independent statutory standing to prosecute a fraudulent transfer action under 11 U.S.C. § 548(a). As set forth at greater length below, the Court finds that except under § 522(h), a Chapter 13 debtor does not have independent standing to pursue an avoidance action. However, the Court finds that the debtor may request that the Chapter 13 trustee ratify, join or seek substitution as the plaintiff in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7017.

The Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Standing Order of Reference issued by the Unit-

ed States District Court for the District of New Jersey on July 23, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and (O). The following constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

### FACTS AND PROCEDURAL HISTORY

The history of this matter has been recited at length in this Court's opinion *In re Ryker (Ryker I)*, 272 B.R. 602 (Bankr. D.N.J.2002) and that of the District Court, *In re Ryker (Ryker II)*, 301 B.R. 156 (D.N.J.2003). Thus, only an abbreviated set of facts is set forth in the following paragraphs.

The debtor, Edward J. Ryker ("Ryker") filed his Chapter 13 case just days after his real property located in Stillwater, New Jersey (the "Property") was sold at a foreclosure sale conducted by the Sheriff of Sussex County. The foreclosing mortgagees, David and Denise Current (the "Currents") were purchasers at the foreclosure sale. Upon learning of the bankruptcy, the Currents immediately moved before the bankruptcy court for a determination that the Property was not property of the bankruptcy estate because the foreclosure sale preceded the Chapter 13 filing. In opposition to the Currents' motion, Ryker argued that the sale should be set aside under 11 U.S.C. § 548(a) for inadequacy of price resulting from the failure to adequately advertise the foreclosure sale. Finding that Ryker's argument was credible, this Court denied the Currents' motion and directed Ryker's counsel to file an adversary proceeding if he desired relief under § 548.

After the adversary proceeding was commenced, the Currents brought a motion requesting that either the complaint be dismissed for lack of jurisdiction, or that the court abstain from hearing the adversary proceeding. Ryker responded by cross-moving for summary judgment, contending that the foreclosure sale was avoidable under § 548. As set forth in *Ryker I*, this Court granted Ryker's motion, finding that inadequate advertising of the sale in effect chilled bidding which produced an inadequate sale price. Neither the parties not the Court addressed whether Ryker was a statutorily authorized party to prosecute the avoidance action.

The Currents appealed the decision set forth in *Ryker I*. In its decision (*Ryker II*) the District Court found that this Court should have addressed whether the Debtor had standing to proceed with avoidance action. Accordingly, the District Court remanded the matter and directed that the bankruptcy court consider the issue of Ryker's standing, particularly in light of the holdings in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) and *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir.2003).

Subsequently, this Court invited further submissions from both Ryker and the Currents on the issue of standing. To some extent, the submissions of both parties amply demonstrate the verity of the admonition "beware of what you ask for." The submissions not only treat the standing issue but also raise other issues as well.

Ryker notes that he listed the Property as an asset on Schedule A of his petition and claimed the full value of the Property as exempt on Schedule C. Further, he observes that no objection was made to the exemption claimed. He accordingly argues that pursuant to § 522(h) he may not only set aside the foreclosure sale, but also exempt the full value of the Property. Secondly, Ryker suggests that should the Court find his § 522(h) argument unper-

suasive, pursuant to Bankruptcy Rule 7017 the Chapter 13 trustee can be joined or substituted as a plaintiff, or can ratify the commencement of the adversary proceeding. Lastly, Ryker argues that despite the lack of explicit statutory authorization for a Chapter 13 debtor to independently prosecute an avoidance action, as in *Cybergenics,* the court's equitable powers should be employed to permit him to do so.

The Currents' legal memorandum does not treat the issue of whether the Chapter 13 trustee can join or ratify the adversary proceeding. Rather, they advance several reasons why Ryker should not be permitted to employ § 522(h) to avoid the foreclosure sale. First, the Currents argue that the exemption claimed by Ryker (the full value of the Property) is not one authorized under § 522(b), and therefore it cannot form a basis for using the trustee's avoidance powers as permitted by § 522(h). Second, they contend that Ryker's exemption claim is frivolous, made in bad faith, and should be disallowed on equitable grounds. Third, the Currents contend that because the meeting of creditors has never been closed, the time period for objecting to Ryker's exemption claim has not run, and they may still object. Finally, the Currents urge that a proper reading of the *Cybergenics* decision yields no support for using the equitable powers of the bankruptcy court to grant a Chapter 13 debtor independent standing to bring a trustee avoidance action.

### *DISCUSSION*

### I. *Statutory Standing*

■ There is a longstanding split of authority regarding the ability of a Chapter 13 debtor to exercise the trustee's avoidance powers. Some courts hold that the Chapter 13 debtor may exercise the avoidance powers in the same manner and to the same degree as a trustee. *See, In re*

*Cohen,* 305 B.R. 886 (9th Cir. BAP 2004); *Thacker v. United Cos. Lending Corp. (In re Thacker),* 256 B.R. 724 (W.D.Ky.2000); *In re Freeman,* 72 B.R. 850 (Bankr. E.D.Va.1987); *In re Weaver,* 69 B.R. 554 (Bankr.W.D.Ky.1987); *In re Ottaviano,* 68 B.R. 238 (Bankr.D.Conn.1986); *In re Einoder,* 55 B.R. 319 (Bankr.N.D.Ill.1985). On the other hand, a growing majority of Courts hold that because of a lack of explicit statutory authority, Chapter 13 debtors cannot utilize the trustee avoidance powers. *See, Realty Portfolio, Inc. v. Hamilton (Matter of Hamilton),* 125 F.3d 292 (5th Cir.1997); *In re Binghi,* 299 B.R. 300 (Bankr.S.D.N.Y.2003); *In re Kildow,* 232 B.R. 686 (Bankr.S.D.Ohio 1999); *In re Merrifield,* 214 B.R. 362 (8th Cir. BAP 1997); *In re Wilkinson,* 186 B.R. 186 (Bankr.D.Md.1995); *In re Redditt,* 146 B.R. 693 (Bankr.S.D.Miss.1992); *In re Perry,* 131 B.R. 763 (Bankr.D.Mass.1991); *In re Bruce,* 96 B.R. 717 (Bankr.W.D.Tex. 1989).

Coincidentally, at about the same time that *Ryker II* directed this Court to consider the issue, in *In re Steck,* 298 B.R. 244 (Bankr.D.N.J.2003) this Court held that a Chapter 13 debtor is not statutorily authorized to use the avoidance powers, except as provided in § 522(h). The Court was persuaded by the reasoning of those cases which found that the statutory language and structure of the Bankruptcy Code dictate that only the Chapter 13 trustee may independently exercise the avoidance powers. 298 B.R. at 247–248. In particular, the Court concluded that this analysis was consistent with that applied by the Supreme Court in *Hartford Underwriters. Id.* at 247.

Recently, the Court in *In re Cohen,* 305 B.R. 886, 897 (9th Cir. BAP 2004) followed an analysis similar to that used in *Hartford Underwriters* to conclude that a Chapter 13 debtor holds the trustee avoid-

ance powers concurrent with the trustee. The Court in *Cohen* began its examination of the issue by acknowledging the split in the lines of case authority. It characterized the majority approach as the "standard analysis of narrow statutory construction", and contrasted this approach with the minority approach which views the language as somewhat ambiguous and relies on the legislative history to infer independent standing for Chapter 13 debtors to use the avoidance powers. *Id.* at 893–895. The Court determined that the gap between the two approaches could be bridged by applying the Supreme Court's "holistic" approach to construing the Bankruptcy Code as set forth in *United Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

From its examination of the structure of Chapter 13 the *Cohen* Court found a number of statutory provisions which demonstrated that a Chapter 13 debtor has standing to prosecute avoidance actions:

a) Under § 1306(b) Chapter 13 debtors may remain in possession of all property of the estate during the case.

b) Under § 541(a)(3) property of the estate includes interests in property recovered by the trustee pursuant to the avoidance powers.

c) Under § 1322(b)(8) property of the estate may be used to fund a Chapter 13 plan.

d) Under the best interest test in § 1325(a)(4) recoveries resulting from use of the avoidance powers would have to be included in the Chapter 13 plan.

e) Under § 1321 and 1325 only a debtor can propose or modify a plan before confirmation.

f) Under § 1303 the debtor may use, sell or lease property of the estate under § 363(b), 363(d), 363(e), 363(f) or 363(*l*).

g) Under § 1302(b)(1) the Chapter 13 trustee has only 7 of the 9 duties of a Chapter 7 trustee.

h) A Chapter 13 debtor engaged in business is required to perform the trustee duties set forth in § 704(8).

i) Neither the Chapter 13 trustee nor the debtor has the trustee duty under § 701(1) to "collect and reduce to money the property of the estate." *Id.* at 895–897.

*Cohen* further found that this statutory structure contemplates standing for a Chapter 13 debtor because otherwise a situation could arise in which recovery of an avoidable transfer could be required in order to meet the best interest of creditors test of § 1324, but the debtor would be without the authority to avoid the transfer. *Id.* at 897. It also found that "[t]he reference to § 363(b) in § 1303 is crucial with respect to the question of debtor standing to avoid transfers." because that "... constraints a debtor's ability to utilize proceeds of avoiding actions by imposing a requirement that they be used only after a 'notice and hearing', which subjects such matters to the control of the court." *Id.* at 897–898.

The statutory construction found by Cohen after its thorough analysis is plausible, but it is ultimately not persuasive because it gives no consideration to the plain language of the statute. Moreover, a reading of the statute in which only the Chapter 13 trustee has standing to prosecute avoidance actions is not inconsistent with the other rights and responsibilities of a Chapter 13 debtor, and is no real impediment to proposing or performing a Chapter 13 plan.

The Court's analysis in *Hartford Underwriters* demonstrates why a more natural

reading of the statute reveals that a Chapter 13 debtor lacks standing to bring avoidance actions. There too the Court employed a holistic approach. It looked to the statutory context, but it began with an examination of the plain language of the statute. The issue in *Hartford Underwriters* was whether an insurance company, as an administrative claimant could recover its unpaid premiums by seeking to surcharge the bank's collateral under § 506(c).[1]

The Supreme Court began its analysis with the well-recognized tenet of statutory construction that when the language of a statute is plain, the Court's duty is to enforce the statute according to its terms. 530 U.S. at 6, 120 S.Ct. 1942. The Court found that the statutory language plainly specified that only the trustee could use § 506(c). *Id.* It thereafter examined the statutory scheme in which § 506(c) was placed and found that the context itself supported the conclusion that only a trustee could seek payment under § 506(c). In particular, the Court observed that "... a situation in which a statute authorizes specific action and designates a particular party empowered to take it is surely among the least appropriate in which to presume nonexclusivity." *Id.* The Court also found that "... the fact that the sole party named—the trustee—has a unique role in bankruptcy proceedings makes it entirely plausible that Congress would provide a power to him and not to others." *Id.* at 7, 120 S.Ct. 1942.

The Supreme Court was also not persuaded by the contention that § 506(c) could be read to include other parties since the language of § 506(c) does not explicitly exclude other parties. The Court pointed out that had Congress intended to include other parties within the ambit of § 506(c) it simply could have said so. *Id.* at 7, 120 S.Ct. 1942. It noted, for example, that under § 502(a) a claim is allowed unless "a party in interest" objects, and § 503(b)(4) allows "an entity" to file a request for payment of an administrative expense. *Id.*

Finally, the Court found that because the most natural reading of § 506(c) is that only the trustee may request payment, the burden of persuading the Court to reach a different reading was " 'exceptionally heavy.'" *Id.* at 9, 120 S.Ct. 1942. The petitioner's arguments that both pre-Code practice and policy concerns favored a broad reading were then examined and found insufficient. *Id.* at 9–13, 120 S.Ct. 1942. With regard to policy concerns, the Court concluded:

> It suffices that the natural reading of the text produces the result we announce. Achieving a better policy outcome—if what petitioner urges is that—is a task for Congress, not the courts.

*Id.* at 14, 120 S.Ct. 1942.

Importantly, the issue before the Court in *Hartford Underwriters* is similar to the issue addressed here: whether statutory language which identifies only the trustee as the party who may act, should be read to include other parties. Applying *Hartford Underwriters*, it is apparent that not only the statutory language, but also the structure of the Code reveals that a Chapter 13 debtor does not have standing to independently assert the trustee avoidance powers. It must be viewed as significant that Congress conferred the avoidance powers on debtors in Chapter 11 and Chapter 12 cases, but did not extend them

---

1. Section 506(c) provides:
   (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of such property to the extent of any benefit to the holder of such claim.

to Chapter 13 debtors.[2] See §§ 1107(a), 1203 and 1303. Section 1303 merely provides Chapter 13 debtors with the rights and powers of a trustee under specified subsections of § 363. Congress' restrictive grant of trustee powers to Chapter 13 debtors must surely be viewed as intentional. This understanding is also buttressed by the fact that Congress provided Chapter 13 debtors with a limited use of the avoidance powers in § 522(h). Had Congress intended for Chapter 13 debtors to have unrestricted use of the avoidance powers, there would be no need for this section.

Equally clear is the ability of the Chapter 13 trustee to employ the avoidance powers. Under § 103(a) the provisions of Chapters 1, 3 and 5 apply to cases commenced under Chapters 7, 11, 12 or 13. 11 U.S.C. § 103(a). Accordingly, a Chapter 13 trustee, is empowered to use all of the avoidance powers found in Chapter 5. This authority is not diminished because a Chapter 13 trustee is not required to perform the duty of a Chapter 7 trustee under § 701(1) to collect and reduce to money the property of the estate. That duty does not provide the authority for the exercise of the avoidance powers. Rather, the authority resides in §§ 544, 545, 547 and 548. The avoidance powers are a means by which a Chapter 7 trustee may meet his duty under § 701(1). Similarly, the exercise of avoidance powers by a Chapter 13 trustee can be a means to fulfill the duty to "... assist the debtor in performance under the plan," set forth in § 1302(b)(4).

Nor is it necessarily contrary to the purpose or functioning of Chapter 13 for the Chapter 13 trustee to be the sole party to exercise the avoidance powers. It would certainly be less cumbersome if the Chapter 13 debtor enjoyed the independent authority to proceed with an avoidance action. However, there is no reason to expect that a Chapter 13 trustee will refuse to act on an avoidance claim that has merit. Further, the Chapter 13 trustee need not personally prosecute each avoidance action. For example, the trustee can retain debtor's counsel as special counsel pursuant to § 327(e) in order to prosecute the matter. Limiting Chapter 13 debtors to the trustee powers identified in § 1303 is consistent with both the statutory language and the structure of the Code.

## II. *Equitable Standing*

■ Ryker suggests that guided by the holding in *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 330 F.3d 548 (3d Cir.2003) this Court should find that the equitable powers of the bankruptcy court provide an alternative basis for the standing of a Chapter 13 debtor to exercise the avoidance powers. Undeniably, the matter at hand and *Cybergenics* involve the same general issue: the standing of a non-trustee to bring an avoidance action. However, because of the specific factual context of *Cybergenics* the question decided was much narrower. There the Creditors' Committee sought to bring the fraudulent transfer action because the Chapter 11 debtor refused to act. The Third Circuit found this situation an appropriate one for the exercise of the bankruptcy court's equitable powers because:

The problem at bar is that the intended system broke down. The debtor refused to bring an action that the Bankruptcy Court found would benefit the estate,

---

**2.** Chapter 12 is no longer an operative chapter, as the enabling legislation expired on

January 1, 2004.

and thereby violated its fiduciary duty to maximize the estate's value

330 F.3d 548.

By contrast, even as of this date, the debtor has not made any request to act, which has been refused by the Chapter 13 Trustee. In short, there is presently no problem in this matter which requires an equitable remedy. Further, the Court in *Cybergenics* found that other Code sections supported the concept of standing for creditors acting on behalf of the estate. 330 F.3d at 560–566. By contrast, as set forth in the preceding section, the specific limitations placed on a Chapter 13 debtor's authority to act strongly suggests that Congress did not envision a greater role for Chapter 13 debtors than granted by the plain statutory language.

### III. *Application of § 522(h)*

■ The Fifth and Ninth Circuit Courts of Appeal permit a debtor to avoid a transfer of exempt property under § 522(h) if (i) the transfer was not a voluntary transfer of property by the debtor; (ii) the debtor did not conceal the property; (iii) the trustee did not attempt to avoid the transfer; (iv) the transferred property is of a kind that the debtor would have been able to exempt from the estate if the trustee had avoided the transfer under § 522(g); and (v) the debtor seeks to exercise one of the trustee's avoidance powers enumerated in § 522(h). *Realty Portfolio, Inc. v. Hamilton (Matter of Hamilton)*, 125 F.3d 292, 297 (5th Cir.1997); *DeMarah v. United States (In re DeMarah)*, 62 F.3d 1248, 1250 (9th Cir.1995). These criteria were adopted and applied by this Court in *In re Steck*, 298 B.R. 244, 248–249 (Bankr. D.N.J.2003).

Ryker asserts that he has the ability to avoid the transfer under § 522(h) because (i) the transfer occurred as a result of a foreclosure sale and thus the transfer was not voluntary; (ii) there was no concealment since the property was listed on the bankruptcy schedules; (iii) the trustee did not seek avoidance of the transfer; (iv) the Property was claimed as exempt on his schedule of exemptions and no objection was filed to the exemption; and (v) he sought to use § 548 to avoid the transfer.

The Currents disagree that Ryker meets the fourth criteria set forth in *Hamilton* and *DeMarah*. They contend that he does not have a valid exemption because the claimed amount is improper, the homestead exemption is inapplicable to the Property, and the exemption is claimed in bath faith and should be disallowed. Additionally, the Currents argue that Ryker may only use a properly claimed exemption as a platform for exercising of the avoidance powers pursuant to § 522(h).

The Currents' arguments have much merit, but require development of a greater factual record. For example, Ryker claimed an exemption for the Property in the amount of the "full value of the debtor's interest in property," citing § 522(d)(1), the homestead exemption. However, the Property is commercial rather than residential, and on the same schedule of exemptions Ryker claimed the full amount of the homestead exemption for his residence. No explanation has been offered either for applying the homestead exemption to both Ryker's residence and the Property, or for asserting the amount of the exemption as the full value of the Debtor's interest in the Property. Rather, counsel merely asserts that under the holding of *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) Ryker's exemption claim cannot be challenged because the time to object has expired.

In *Taylor* the trustee filed a late objection to the debtor's claimed exemption. He argued that late objections ought to be

permitted under § 522(*l*) and Bankruptcy Rule 4003(b) "... if the debtor did not have a good-faith or reasonably disputable basis for claiming it." 503 U.S. at 643, 112 S.Ct. 1644. The Supreme Court rejected the trustee's suggestion to incorporate a good faith requirement into the statute and rule. Reading the plain language of both § 522(*l*) and Rule 4003(b), the Court found that the literal language of the statute and rule did not authorize it to limit application of § 522(*l*) to only exemptions claimed in good faith. *Id.* at 644–645, 112 S.Ct. 1644.

However, the *Taylor* holding does not mean that an exemption claimed in bad faith or for an improper purpose cannot be challenged by other means. In *Taylor*, the Supreme Court observed that Rule 9011 sanctions and criminal penalties under 18 U.S.C. 152 are among the available remedies. *Id.* at 644, 112 S.Ct. 1644. Additionally, the *Taylor* opinion does not rule out use of the Court's equitable power under § 105 to disallow an exemption. The Currents correctly note that the Supreme Court declined to address the trustee's argument that § 105 could be used to disallow an exemption claim in bad faith because the question was not put before the Court in the writ of certiorari. *Id.* at 645–646, 112 S.Ct. 1644.

However, any determination under § 105 or other similar statute or rule requires a fully developed factual record. An adequate factual record is not present in this matter because only now, in connection with the remand, are both Ryker and Current addressing the validity of Ryker's claimed exemption for the Property. The Currents raise the bad faith issue in their memorandum of law, but there is no response from Ryker either as to the legal merit of their position or the factual basis for his claimed exemption. This is undoubtedly due to the fact that both parties agreed that they would make no further submissions after their initial legal memoranda.

■ Likewise, factual issues exist as to whether or when the Chapter 13 Trustee concluded the meeting of creditors under § 341(a) ("§ 341(a) Meeting"). However, the Court need not further delay this matter in order to develop a factual record on either issue because it finds that even if the Currents' objection to Ryker's claimed exemption is untimely for purposes of § 522(*l*), they may nonetheless challenge the validity of the exemption as part of their opposition to Ryker's attempt to avoid the foreclosure sale pursuant to § 522(h).

Section 522(h) permits a debtor to avoid a transfer of property to the extent the debtor could have exempted the property under § 522(g)(1). In turn, § 522(g)(1) permits a debtor to exempt property recovered by a trustee "to the extent that the debtor could have exempted such property under subsection (b) of this section ..." This language is essentially identical to that contained in § 522(f)(1) which permits a debtor to avoid a lien "to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section ..." In the context of a debtor's motion to avoid a lien pursuant to § 522(f)(1), a number of courts have found that a lien creditor's failure to object to a debtor's claimed exemption does not prevent it from raising the validity of the exemption as part of its defense to a lien avoidance motion. See *In re Schoonover*, 331 F.3d 575, 578 (7th Cir. 2003); *In re Morgan*, 149 B.R. 147, 151–152 (9th Cir. BAP 1993); *In re Moe*, 179 B.R. 654, 656 (Bankr.D.Mont.1995); *In re Streeper*, 158 B.R. 783, 788 (Bankr. N.D.Iowa 1993); *In re Maylin*, 155 B.R. 605, 612–613 (Bankr.D.Me.1993); *In re Mitchell*, 80 B.R. 372, 375–377 (Bankr.

W.D.Tex.1987). Given the similarity of language in § 522(f) and § 522(g), the Court finds this conclusion readily applicable to matter at hand. In particular, the Court is persuaded by much of the analysis of the issue set forth in *Morgan*.

In *Morgan,* the Court first looked at the statutory language of § 522(f), finding that the language in § 522(f) which requires that the debtor "would have been" entitled to an exemption under § 522(b) requires the court to find that the debtor is actually entitled to the exemption under relevant state or federal law. 149 B.R. at 152. "Reliance on the exemption-by-default of § 522(*l*) does not satisfy this standard." *Id.* Second, the Court found that the purpose of § 522(f) is different than that of § 522(*l*). *Id.* It found that the purpose of § 522(f) is simply to permit a debtor to avoid certain types of liens on exempted property, and that avoidance actions do not interfere with estate administration and do not need to be commenced promptly. *Id.* On the other hand, the purpose of § 522(*l*) is to allow a trustee to promptly determine the assets which comprise the estate. *Id.* Further, because the purposes are different, it is not necessary to permit a debtor to use the exemption-by-default of § 522(*l*) in order to harmonize the two subsections of § 522. *Id.* Elaboration on this point can be found in *Mitchell,* where the court concluded:

> Section 522(b) defines those exemptions to which the debtor is *in fact* entitled. These are the exemptions which, consistent with the legislative history, are worthy of the extraordinary protection of Section 522(f). Section 522(*l*) serves an entirely different function, that of promptly liberating property the debtor wishes to keep for his "fresh start" from the continuing administration of the bankruptcy court. Once the debtor has his exempt property back, that policy has been satisfied. Lien avoidance ac-

tions can then be initiated in the debtor's own good time. That the property might not be eligible for lien avoidance because it does not qualify under Section 522(b) certainly hinders the debtor's fresh start, but only because there are congressional limits on the fresh start to which the debtor is entitled built into Section 522(f). The enunciated policy of prompt determination is unaffected by the fact that the debtor who later wants to avoid a creditor's lien may not be able to get past Section 522(b).

80 B.R. at 376 (citations omitted).

The Court in *Morgan* additionally found that equity requires that the underlying basis for an exemption be considered in the lien avoidance context. 149 B.R. at 152. The *Morgan* court concurred with *In re Montgomery,* 80 B.R. 385, 389 (Bankr. W.D.Tex.1987) that it is "entirely appropriate that a debtor about to eliminate another's property rights be put to his or her proof, and not be permitted to rely on a technical estoppel which is at best only tangentially related to the lien avoidance issue in any event."

■ Applying this analysis to § 522(h) and the facts of the matter at hand it is readily apparent that this Court should look to the statutorily permitted exemption rather than the exemption claimed by Ryker on his Schedule of Exemptions. Because the Property is commercial property, it is not eligible for the homestead exemption claimed by Ryker under § 522(d)(1). Arguably Ryker could still apply the "wildcard" exemption under § 522(d)(5). However, Ryker has already applied this exemption to various items of personalty and it is not available to be applied to the Property. Accordingly, the Court finds that Ryker does not satisfy the fourth criteria of the test set forth in *Hamilton* and *DeMarah,* and he may not

employ § 522(h) to avoid the foreclosure sale.

## IV. *Trustee as Real Party in Interest*

Ryker's inability to proceed under § 522(h) does not mean that the adversary proceeding to avoid the foreclosure sale must fail. Federal Rule of Civil Procedure 17(a), which is made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 7017 provides:

> Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed.R.Bankr.P. 7017(a).

This rule insures that a party litigating a particular issue is actually the party entitled to enforce the claim or right being litigated. With regard to this matter the Chapter 13 trustee, not the debtor, is the only party who may use § 548 to avoid the foreclosure sale of the Property. At present, nothing in the record indicates whether the Chapter 13 Trustee intends to ratify, join or be substituted in the adversary proceeding. Ryker and his counsel are directed to immediately confer with the Chapter 13 Trustee, who shall thereafter advise the parties and the Court whether she will ratify, join, or be substituted in this adversary proceeding.

## *CONCLUSION*

As set forth at greater length in the preceding paragraphs, the Court finds that Ryker does not have standing, except pursuant to § 522(h), to pursue the § 548 action against the Currents. The Court also finds that because Ryker does not have a valid exemption claim under § 522(b), he may not utilize § 522(h) to avoid the foreclosure sale of the Property. Finally, the Court finds that the Chapter 13 Trustee may pursue such an action as the real party in interest and shall be afforded a reasonable time to make such a determination.